## CARY v. APPO.

(Supreme Court, Appellate Term. November 6, 1903.)

1. CONTRACTS—CONSTRUCTION—WANT OF MUTUALITY—REVOCATION.
    A contract for the purchase of certain books, to be paid for in installments, and providing that "I [the purchaser] understand that this order is not subject to countermand or cancellation. You are at liberty to consult as to my reputation for keeping business promises"—is a mere order, revocable at any time before acceptance, and, considered as a contract, is unilateral, without consideration, void for want of mutuality, and not enforceable after revocation.

2. SAME—ACCEPTANCE—ACTS OF AGENT—ABSENCE OF AUTHORITY.
    The fact that a book agent affixed his name after the word "Salesman" on an order for the purchase of books, and also wrote the words "10 per cent. off" upon the margin of the order, does not show an acceptance of the order by the publisher, where there is no evidence of the salesman's authority to accept the order or reduce the price.

3. SAME—ORDERS—LIABILITY BEFORE ACCEPTANCE.
    The fact that a publisher incurs a liability to a book agent for his commission, for every order obtained, without regard to the outcome of the

sale, does not render the maker of the order liable thereon before acceptance by the publisher, in the absence of any showing that he knew of that fact.

4. SAME—STIPULATIONS FOR PAYMENT—EFFECT.

A statement in an order for the purchase of books, "first payment may be made to the agent," does not show an acceptance of the order by the publishers, where no such payment was made, and there was no showing who the agent was to whom payment might be made.

5. SAME—PROMISE IN ORDER—WANT OF CONSIDERATION.

A statement in an order for the purchase of books that the purchaser understood "that this order is not to be countermanded," even if considered as a promise, is without consideration.

Appeal from Municipal Court, Borough of Manhattan, Seventh District.

Action by Arthur L. Cary against St. John Appo. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and BISCHOFF and BLANCHARD, JJ.

Frank C. Baker, for appellant.

J. Brace Chittenden, for respondent.

FREEDMAN, P. J. The facts in this case are not in dispute. It is conceded that on January 2, 1902, the defendant signed an order as follows:

A. No. 936.
C. No. 5936.
Special price to endorser.
25 Vol. $5.00 ea. $125.
14 " Complimentary 70.
     $ 55.
10% off     5.50
     $ 49.50

No agreement is valid other than embodied in this contract.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Jan. 2nd, 1902.

Avil Publishing Company, 3941 Market Street, Philadelphia—Gentlemen: Please deliver to me one set edition de Luxe of the "The Ridpath Library of Universal Literature," in twenty-five volumes, bound in half Leather, for which I agree to pay you $49.50 Dollars, payable as follows: $5.00 down and $5.00 each month thereafter until the full amount is paid, default of which renders the whole amount due. The title to said books does not pass to me until they are paid for in full. I understand this order is not subject to countermand or cancellation. You are at liberty to consult as to my reputation for keeping business promises.

Subscriber's signature—St. John Appo.
       "     Occupation—Journalist.
       "     Business address—Park Row Building.
       "     Residence—163 Clinton Av., B'klyn.

Deliver books at 163 Clinton Av., B'klyn, N. Y. City. Salesman, B. Kende.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

First payment may be made to agent. All others to be made in person or by mail on our order.

On the 7th of January, 1903, the defendant wrote the Avil Publishing Company, the assignors of the plaintiff, that he had changed his mind, and notified them that he refused to accept the books. On January 13th the Avil Printing Company wrote the defendant that they could not accept the countermand of the order, and subsequently, when the books were reshipped to them, they refused to accept them. It is agreed that the books were tendered on January 27, 1903.

The legality of an instrument of similar import was carefully· considered by this court in the case of the Hallwood Cash Register Company v. Finnegan (decided at the June term, 1903) 84 N. Y. Supp. 154, and we see no reason for changing our opinion.

The respondent argues that the writing contains a promise on the part of the plaintiff's assignor "to extend credit, to deliver the goods, and to give title thereto upon payment." Not a single promise or agreement of that kind is expressed therein. The true and legal import of the instrument is this. The defendant, by his subscription thereto, simply says to the Avil Printing Company: "If you will deliver to me," etc., "I will pay you $49.50 as follows:  *   *   * Upon default in making any payment, you may consider the whole amount due. The title of said books does not pass," etc. "I will not countermand this order." This is a mere order, revocable at any time before acceptance, and is void for want of mutuality, is unilateral, without consideration, and not enforceable after revocation. Chicago & G. E. R. Co. v. Dane, 43 N. Y. 240; Coe v. Tough, 116 N. Y. 273–280, 22 N. E. 550; Macedon & B. P. Co. v. Snediker, 18 Barb. 318. The printing company made no· promise whatever. That they regarded it as an order to be accepted or rejected by them as they deem best is apparent not only from the use of that word in the sentence, "I understand this order is not subject to countermand or cancellation," but also in the use of these words, "You are at liberty to consult as to my reputation for keeping promises." Will it be contended that if the plaintiff's assignors, upon inquiry, had ascertained that the defendant was irresponsible and unreliable, they could have been compelled to furnish the goods under any agreement contained therein? Neither is there any evidence that plaintiff's assignors accepted said order. The solicitor, it is true, affixed his name thereto after the word "Salesman." This was evidently to enable the printing company to identify the person who took the order. It appears that the salesman also wrote the words "10% off" upon the margin of the order, but that he had any authority to accept said order or to reduce the price does not in any way appear. The case in that respect is similar to Hallwood Cash Register Company v. Finnegan, supra, where the court said, "Whether the order was [sent or mailed] handed to a representative of the plaintiff empowered to or who did accept it on its behalf does not appear." It is conceded that on January 7, 1903, five days after giving the order, the defendant revoked the same, which revocation·the plaintiff's assignors duly received.

The respondent urges that the instrument is binding upon the defendant, for the reason that the plaintiff's assignor "then and there suffered a detriment, inasmuch as they became liable to their agent for his commission, which is advanced without regard to the outcome of the sale." It may reasonably be doubted whether the printing company agree to pay their salesman a commission upon every order obtained, without regard to the financial standing or reputation of the person so ·giving the order, and immediately make payment of the commission before acceptance by them of the order. Even if that be true, the defendant is not shown to have known of that fact, and is in no way responsible therefor.

'Neither can the statement contained in the instrument that "First payment may be made to agent, all others to be made in person or by mail to our order," be considered as an acceptance of the order by the company. "Agent" and "salesman" are not synonymous terms, nor are they used as such in the order. Who the agent is to whom such payment may be made, does not appear. No such payment was made in this case. If one had been made and retained by the company, an acceptance of the order might then have been urged with some force. The defendant's understanding that this order is not to be counter-manded is of no force. Even if it is to be regarded as a promise, it is wholly without consideration. See Hallwood Cash Register Co. v. Finnegan, supra. The learned trial judge, in deciding this case, mis-understood the decision of this court in the Hallwood Case. He states that he is "bound to follow the decision of the Appellate Term" (at the same time apparently having doubts as to its legality), and therefore gives the plaintiff herein a judgment; evidently assuming that the Appellate Term affirmed the judgment in the Hallwood Case. The judgment in the Hallwood Case was reversed, however. The case of Ideal Cash Register Company v. Zunino (decided, in Novem-ber, 1902, by this court) 79 N. Y. Supp. 504, is distinguished in the opinion in the Hallwood Case; and that case, as well as the other case cited by the respondent, has no application to the case at bar. They were all cases in which there were mutual promises. They are all based upon an agreement by one party to sell, and upon the other to buy.

Judgment reversed. New trial ordered, with costs to the appellant to abide the event. All concur.